**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| ROBERT L.,<br><br>Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>Defendant. | Civil Action No. 25-16214 (GC)<br><br>**MEMORANDUM OPINION** |

**CASTNER, District Judge**

THIS MATTER comes before the Court upon Plaintiff Robert L.'s[1] appeal from the final decision of the Commissioner of the Social Security Administration (Commissioner) partially denying Plaintiff's application for Supplemental Security Income (SSI) under Title XVI of the Social Security Act, 42 U.S.C. § 1381, *et seq*. (ECF No. 1; AR 1849-79.) After careful consideration of the entire record, including the entire Administrative Record, the Court decides this matter without oral argument in accordance with Federal Rule of Civil Procedure (Rule) 78(b) and Local Civil Rule 78.1(b). For the reasons set forth below, and other good cause shown, the Court **AFFIRMS** the Commissioner's final decision.

---

[1] Plaintiff is identified by first name and last initial. *See* D.N.J. Standing Order 2021-10.

# I. BACKGROUND

## A. Procedural History

Plaintiff is 49 years old, has a high-school education, and has worked as a mechanic, welder, and tattoo artist. (AR 33-38.)[2] In January 2017, Plaintiff filed an application for SSI. (*Id.* at 195-201, 230.) Plaintiff alleged that, since January 3, 2017, he has had a disability consisting of high blood pressure, Hepatitis C, degenerative disc disease, panic disorder, borderline personality disorder, spinal stenosis, irritable bowel syndrome, deformities of the right knee, major depressive disorder, opioid withdrawal, and hypermetropia. (*Id.* at 195-201, 230.) The Social Security Administration denied Plaintiff's application initially and on reconsideration. (*Id.* at 98-100, 108-111.) Plaintiff requested a hearing before an Administrative Law Judge (ALJ). (*Id.* at 111-113.)

On July 11, 2019, an ALJ held a hearing and on July 24, 2019, the ALJ issued an unfavorable decision, finding Plaintiff not disabled from the alleged onset date to the date of the ALJ's decision. (*Id.* at 21, 28.) The ALJ reasoned that Plaintiff had the Residual Functional Capacity (RFC)[3] to perform sedentary work with some limitations. (*Id.* at 16, 21.) Plaintiff requested a review of the ALJ's decision before the Appeals Council, and on July 21, 2020, the Appeals Council found that there were no grounds for review, making the ALJ's decision the Commissioner's final decision. (*Id.* at 1.) On September 22, 2020, Plaintiff challenged the ALJ's

---

[2] "AR" refers to the Administrative Record, available at ECF No. 5. This Memorandum Opinion cites the internal page numbers when referring to the Administrative Record. Page numbers for all other docket citations refer to the page numbers stamped by the Court's e-filing system and not the internal pagination of the parties.

[3] Residual functional capacity is defined as "the most you can still do despite your limitations." 20 C.F.R. § 416.945(a).

decision in this court pursuant to 42 U.S.C. § 1383(c)(3). *Laroque v. Kijakazi*, Civ. No. 20-13003, 2022 WL 225515, at *7 (D.N.J. Jan. 26, 2022).

In January 2022, the district court vacated the Commissioner's decision and remanded the case for further administrative proceedings. *Id.* at *9. The Court held that the ALJ's RFC analysis was "deficient" because "the ALJ misreported and discounted" the opinion of one of Plaintiff's treating physicians, Dr. Lupicki, "without sufficient explanation"—specifically, the ALJ misstated Dr. Lupicki's 2017 opinion that Plaintiff could sit less than six hours a day and wrote instead that Plaintiff could "sit for 6 hours" in a typical 8-hour workday. *Id.* at *8. The Court held that vacating the ALJ's decision was also proper because "the ALJ failed to adequately address Plaintiff's use of a cane." *Id.*

On July 28, 2023, after a new hearing, an ALJ again issued Plaintiff an unfavorable decision finding Plaintiff not disabled from the alleged onset date of January 3, 2017 to the date of the decision. (AR 1491.) The ALJ again found that Plaintiff had the RFC to perform sedentary work with some limitations. (*Id.* at 1496.) On October 18, 2023, Plaintiff again challenged the ALJ's decision in district court. *Laroque v. Commissioner*, Civ. No. 23-21263, Dkt. No. 1 (D.N.J. Oct. 18, 2023). On August 22, 2024, the district court entered a consent order reversing and remanding the decision. (AR 1915-17.) The Appeals Council vacated the Commissioner's decision and remanded the matter back to the ALJ to identify and resolve conflicts between the information in the *Dictionary of Occupational Titles* and the occupational evidence that a vocational expert had provided at the hearing before the ALJ. (*Id.* at 1920-21.)

On February 7, 2025, the ALJ held a third hearing at which Plaintiff and a vocational expert testified. (*Id.* at 1880.) The ALJ issued a decision finding Plaintiff disabled with an onset date of August 15, 2022, but not before. (*Id.* at 1870.) Plaintiff alleges that this decision became the final

decision of the Commissioner on August 24, 2025. (ECF No. 1 at 2.) In October 2025, Plaintiff appealed that decision. (*Id.*)

**B. The ALJ's Decision**

In the most recent ALJ opinion in this case, the ALJ used the requisite five-step sequential evaluation process to determine that Plaintiff was disabled starting on August 15, 2022. (*Id.* at 1853-55.) *See also* 20 C.F.R. § 416.920(a)(4) (describing the five-step process).

At step one, the ALJ found that Plaintiff "has not engaged in substantial gainful activity since the date of application."[4] (AR 1855.) The ALJ found that although Plaintiff had made $13,603.73 in 2021, these earnings did not rise to the level of "substantial gainful activity." (*Id.*)

At step two, the ALJ found that "[s]ince . . . January 3, 2017, [Plaintiff] has had the following severe impairments: degenerative disc disease of the lumbar spine, degenerative joint disease of the right knee, a depressive disorder, an anxiety disorder, and a history of substance abuse." (*Id.*) The ALJ found that these impairments "significantly limit [Plaintiff's] ability to perform basic work activities." (*Id.*) However, the ALJ found that "[t]he evidence fails to establish impairments involving Hepatitis C, irritable bowel syndrome, or ulcerative colitis that imposed more than a slight functional limitation on the claimant's ability to perform work related activity for 12 consecutive months." (*Id.*) Accordingly, the ALJ found that Plaintiff's gastrointestinal impairments and Hepatitis C were not "severe." (*Id.*)

---

[4] "Substantial gainful activity is work activity that is both substantial and gainful." 20 C.F.R. § 416.972. Substantial work activity "involves doing significant physical or mental activities. [A claimant's] work may be substantial even if it is done on a part-time basis or if [the claimant] do[es] less, get[s] paid less, or ha[s] less responsibility than when [the claimant] worked before." *Id.* § 416.972(a). "Gainful work activity is work activity that [a claimant] do[es] for pay or profit. Work activity is gainful if it is the kind of work usually done for pay or profit, whether or not a profit is realized." *Id.* § 416.972(b).

At step three, the ALJ found that, "[s]ince January 3, 2017, Plaintiff has not had an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments" in the applicable regulation. (*Id.* at 1856.) *See* 20 C.F.R. § 416.925(a) (pointing ALJs to "appendix 1 of subpart P of part 404 of this chapter"). The ALJ found that Plaintiff's mental impairments imposed only "moderate" or "mild" limitations and noted that in particular, Plaintiff was "moderately limit[ed]" in "interacting with others" based on Plaintiff's statements that it took him a long time to learn respect for his peers. (*Id.* at 1857.)

At step four, the ALJ conducted an RFC assessment to determine whether Plaintiff could perform the requirements of past relevant work. (*Id.* at 1854.) *See* 20 CFR §416.920(e). The ALJ concluded that

> prior to August 15, 2022, . . . [Plaintiff] had the residual functional capacity to perform sedentary work as defined in 20 CFR 416.967(a) except he can occasionally climb ramps and stairs but never climb ladders, ropes and scaffolds. He can occasionally balance, stoop, crouch but never kneel or crawl. He needs a cane to ambulate to and from the workstation. He must avoid all exposure to hazards such as machinery and heights. He is able to understand, remember and carry out simple instructions. He is restricted to work involving few workplace changes, occasional decision making. With respect to the essential functions of the job. He can have occasional interaction with supervisors, coworkers but no interaction with the public.

(*Id.* at 1859.) To arrive at this conclusion, the ALJ stated that he "considered all [of Plaintiff's] symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence." (*Id.* (citing 20 C.F.R. §§ 404.929 and Social Security Ruling (SSR) 16-3p (Evaluation of Symptoms in Disability Claims), 2017 WL 5180304 (Oct. 25, 2017)).) The ALJ also considered "the medical opinion(s) and prior administrative medical finding(s)." (*Id.* (citing 20 CFR 416.920c).)

In considering Plaintiff's symptoms, the ALJ stated that he must follow a two-step process. First, the ALJ stated that he must determine whether "there is an underlying medically

determinable physical or mental impairment . . . that could reasonably be expected to produce the claimant's pain or other symptoms." (*Id.*) Second, if there is such an impairment, the ALJ stated that he would then evaluate "the intensity, persistence, and limiting effects" of the symptoms "to determine the extent to which they limit the claimant's work-related activities." (*Id.*) In making this evaluation, the ALJ stated that if Plaintiff's statements about intensity, persistence, and limiting effects "are not substantiated by objective medical evidence," he must consider "other evidence in the record to determine if the claimant's symptoms limit the ability to do work-related activities." (*Id.*)

Applying these standards, the ALJ reviewed Plaintiff's testimony and medical history and found the first step of this process satisfied, as Plaintiff's "medically determinable impairments [(MDIs)] could reasonably be expected to cause the . . . symptoms" that Plaintiff alleged. (*Id.* at 1860.) The ALJ then proceeded to the second step and found that Plaintiff's "statements concerning the intensity, persistence, and limiting effects of these symptoms are not fully supported prior to August 15, 2022." (*Id.*)

The ALJ then discussed the role that medical opinions played in his RFC assessment. (*Id.* at 1865.) The ALJ gave the opinions of Dr. Lupicki "little weight as they are not supported by substantial evidence or consistent with the medical evidence of record." (*Id.*) The ALJ gave the opinions of the Disability Determination Services consultants "partial weight" as "they did not personally examine the claimant or have the benefit of reviewing the full case record." (*Id.*) The ALJ gave the opinion of Plaintiff's therapist "very little weight" as this therapist is "not an 'acceptable medical source' (AMS) qualified to provide medical opinions under the disability regulations." (*Id.* at 1866 (citing 20 CFR 416.902(a)).) The ALJ gave "great weight" to the opinion of Dr. Williamson, the Commissioner's examining psychiatrist "as it is supported by

objective mental status findings and consistent with other medical evidence of record." (*Id.*) Lastly, the ALJ gave the Third-Party Function Report completed by Plaintiff's aunt "some weight." (*Id.*)

The ALJ separately conducted an RFC assessment for Plaintiff's capabilities after August 15, 2022, and concluded that Plaintiff

> had the residual functional capacity to perform sedentary work as defined in 20 CFR 416.967(a) except he can occasionally climb ramps and stairs but never climb ladders, ropes and scaffolds. He can occasionally balance, stoop, crouch but never kneel or crawl. He needs a cane to ambulate *and balance*. He must avoid all exposure to hazards such as machinery and heights. He is able to understand, remember and carry out simple instructions. He is restricted to work involving few workplace changes, occasional decision making. With respect to the essential functions of the job, he can have occasional interaction with supervisors, coworkers but no interaction with the public.

(*Id.* at 1867 (emphasis added).) The ALJ reviewed medical evidence and Plaintiff's testimony and found Plaintiff satisfied the first step. (*Id.*) He then proceeded to the second step, where the ALJ determined that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are consistent with the objective medical evidence and other evidence." (*Id.*) The ALJ also discussed the role that medical opinions played in this RFC assessment, giving "partial weight" to an opinion by Dr. Potashnik, who performed a physical consultative examination of Plaintiff in 2025, as this opinion was "consistent with the medical evidence as of August 15, 2022." (*Id.*)

The ALJ based his RFC assessment on the above considerations and noted that Plaintiff has no past relevant work and thus transferability of job skills is not an issue in this case. (*Id.* at 1868.)

Finally, at step five of the sequential evaluation process, the ALJ found that *prior* to August 15, 2022, "considering the claimant's age, education, work experience and residual functional

capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed." (*Id.*) The ALJ cited testimony by the vocational expert that before August 15, 2022, Plaintiff could have performed the requirements of a scale operator, table worker or bench worker. (*Id.*) However, also citing testimony from the vocational expert, the ALJ found that *after* August 15, 2022, there were no jobs in significant numbers in the national economy that Plaintiff could perform. (*Id.* at 1869.) Accordingly, the ALJ found that on August 15, 2022, Plaintiff became "disabled" and has continued to be disabled through the date of the ALJ's decision. (*Id.*) The ALJ noted that Plaintiff's history of substance abuse was not material to the finding of disability. (*Id.*)

## II. LEGAL STANDARD

### A. Standard of Review

The Court has jurisdiction to review the Commissioner's decision under 42 U.S.C. § 1383(c)(3) and the power to enter "a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remand[]." 42 U.S.C. § 1383(c)(3); *id.* at 405(g); *see also Podedworny v. Harris*, 745 F.2d 210, 221 (3d Cir. 1984). In conducting this review, the Court is "not permitted to re-weigh the evidence or impose [its] own factual determinations." *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 359 (3d Cir. 2011) (citation omitted). Instead, the Court must "scrutinize the record as a whole to determine whether the conclusions reached are rational" and "supported by substantial evidence." *Gober v. Matthews*, 574 F.2d 772, 775-76 (3d Cir. 1978) (citation omitted).

Substantial evidence is "defined as 'more than a mere scintilla'; it means 'such relevant evidence as a reasonable mind might accept as adequate.'" *Hagans v. Comm'r of Soc. Sec.*, 694 F.3d 287, 292 (3d Cir. 2012) (quoting *Plummer v. Apfel*, 186 F.3d 422, 427 (3d Cir. 1999)). Evidence is not substantial "if it is overwhelmed by other evidence—particularly certain types of

evidence (*e.g.*, that offered by treating physicians)—or if it really constitutes not evidence but mere conclusion." *Nazario v. Comm'r Soc. Sec.*, 794 F. App'x 204, 209 (3d Cir. 2019) (quoting *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983)). "Where the ALJ's findings of fact are supported by substantial evidence," the Court is "bound by those findings, even if [it] would have decided the factual inquiry differently." *Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001) (citation omitted); see also 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Legal issues, in contrast, are subject to a plenary or de novo review. *See Hess v. Comm'r Soc. Sec.*, 931 F.3d 198, 208 n.10 (3d Cir. 2019) ("We exercise plenary review over legal conclusions reached by the Commissioner . . . .") (quoting *Chandler*, 667 F.3d at 359).

**B. Determining Disability**

To be eligible for SSI due to disability under the Social Security Act, a claimant must establish that they are "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). The individual's impairment must be severe to the point that the individual cannot engage in his or her previous work or in "any other kind of substantial gainful work which exists in the national economy," *i.e.*, work that exists in significant numbers either in the region where the individual lives or in several regions of the country. 42 U.S.C. § 1382c(a)(3)(B); *Plummer*, 186 F.3d at 427-28. A physical or mental impairment is one that "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 1382c(a)(3)(D).

### C. Sequential Evaluation

The Social Security Administration has developed a sequential, five-step process for evaluating disability claims. *McCrea v. Comm'r of Soc. Sec.*, 370 F.3d 357, 360 (3d Cir. 2004). The process considers whether the claimant

> (1) is engaged in substantial gainful activity; (2) suffers from an impairment or combination of impairments that is "severe"; (3) suffers from an impairment or combination of impairments that meets or equals a listed impairment; (4) is able to perform his or her past relevant work; and (5) is able to perform work existing in significant numbers in the national economy.

*Id.* (citing 20 C.F.R. §§ 404.1520(a)-(f), 416.920(a)-(f)). "The evaluation will continue through each step unless it can be determined at any point that the claimant is or is not disabled." *Rios v. Comm'r of Soc. Sec.*, 444 F. App'x 532, 534 (3d Cir. 2011) (citing 20 C.F.R. § 404.1520(a)(4)). The claimant bears the ultimate burden of proof at the first four steps, at which point the burden shifts to the Commissioner at the fifth step. See *Hess*, 931 F.3d at 201.

## III. DISCUSSION

Plaintiff asserts that substantial evidence in the administrative record establishes his entitlement to the benefits for which he applied, and Plaintiff asks this Court to reverse the final decision of the Commissioner and order a payment of benefits. (ECF No. 6 at 3, 6-7.)[5] Plaintiff submits that this remedy is appropriate because Plaintiff's SSI application was filed more than nine years ago, Plaintiff has "proven his disability," and "any further delay . . . would frustrate justice." (*Id.* at 41-42.) In the alternative, Plaintiff asks that this Court remand these claims to the Commissioner for reconsideration. (*Id.* at 3, 6.)

---

[5] Plaintiff appears to challenge only the portion of the Commissioner's decision denying benefits. (ECF No. 1 at 2 ("[T]he plaintiff respectfully requests . . . [t]hat this Court reverse the defendant's decision denying the plaintiff's application . . . .").)

Plaintiff asserts four reasons why the Commissioner's decision should be reversed: (1) in determining Plaintiff's RFC, the ALJ did not explain the different limitations he assessed regarding Plaintiff's ability to interact with the public versus his co-workers and supervisors; (2) the ALJ erred at steps two and three when he found that certain ailments were not "severe," and he erred again in failing to consider the non-severe impairments in his RFC determination; (3) the ALJ's RFC finding is deficient because the ALJ failed to adequately explain how, prior to 2022, Plaintiff "needed [a] cane to walk and stand but not to balance"; and (4) the ALJ failed to incorporate into his RFC finding the fact that, since 2017, Plaintiff has been unable to sit for 6 hours a day.

**A. Limitations on Interactions with the Public, Co-workers, and Supervisors**

First, Plaintiff argues that the RFC must be vacated because the ALJ made contradictory findings when he concluded that Plaintiff had only "'moderate' limitations" in the realm of interacting with others but could tolerate "no interaction with the public." (*Id.* at 18.) Plaintiff contends that the ALJ needed an "evidentiary basis" to address interactions with co-workers and supervisors separately from interactions with the public. (*Id.* at 18-19.) In contrast, the Commissioner argues that the ALJ's RFC determination is supported by substantial evidence—including evidence suggesting Plaintiff would have fewer difficulties interacting with supervisors and coworkers as opposed to the general public—and meets the "reasonable articulation" standard. (ECF No. 8 at 10.)

A claimant's RFC is the most that the claimant can do despite their limitations. 20 C.F.R. § 416.945(a)(1). When conducting an RFC assessment, an ALJ is not required to provide a "written analysis about how [the ALJ] considered each piece of evidence." *Joseph P. v. Comm'r Soc. Sec.*, Civ. No. 21-13524, 2023 WL 1929945, at *5 (D.N.J. Feb. 10, 2023) (alteration in original) (quoting Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844, 5858 (Jan. 18, 2017)). Instead, the regulations reflect a "reasonable articulation standard"

in which the "decision need only 'allow a subsequent reviewer . . . to trace the path of an adjudicator's reasoning.'" *Id.* (quoting 82 Fed. Reg. at 5858). An ALJ is not required "to use particular language or adhere to a particular format in conducting [the] analysis." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004).

Here, the ALJ adequately explained his reasoning in support of his conclusion that Plaintiff could have "occasional interaction with supervisors, coworkers but no interaction with the public." (AR 1859, 1867.) The ALJ noted at step three that Plaintiff did not "allege limitation getting along with others" in his January 2017 Function Report. (AR 1857.) The ALJ also made note of Plaintiff's statement that he respects authority figures, but that it took him time to learn respect for his peers. (*Id.*) The ALJ observed that Plaintiff never indicated being fired or laid off because of problems getting along with other people. (*Id.*) When determining that Plaintiff had only "moderate" limitations on mental functioning, the ALJ noted that Plaintiff's mental status exams were "largely unremarkable" outside of Plaintiff's "depressed and anxious mood" and the medical evidence supports that Plaintiff was able to manage his activities of daily living and assist with household chores. (*Id.* at 1864.)

The ALJ's explanation is sufficient to allow this Court to "trace the path" of the ALJ's reasoning. The ALJ distinguished between Plaintiff's ability to perform tasks and Plaintiff's mood and overall mental health, and the ALJ cited evidence that Plaintiff performed differently in these areas. Additionally, the ALJ cited evidence that Plaintiff had better relationships with authority figures than peers, which supports the ALJ's finding that Plaintiff was able to interact with people in the workplace, including supervisors, but not the general public. The Court notes that the ALJ's RFC determination insofar as it pertains to Plaintiff's mental limitations is therefore "supported by substantial evidence."

**B. Severity of Plaintiff's Gastrointestinal Impairments and Hepatitis C**

Plaintiff contends that the ALJ erred when he found that Plaintiff's irritable bowel syndrome, Hepatitis C, and ulcerative colitis were not "severe." (ECF No. 6 at 23.) Plaintiff argues that the ALJ's "recitation of the evidence" concerning these impairments was "incomplete" and "far from neutral" because the ALJ omitted "complications" that followed from Plaintiff's "chronic" ulcerative colitis. (*Id.* at 23-24.) Plaintiff submits that the ALJ also omitted the fact that Plaintiff could not obtain in-person treatment due to the COVID-19 pandemic. (*Id.* at 24.) Finally, Plaintiff argues that once the ALJ declined to classify some of Plaintiff's impairments as "severe," the ALJ erroneously failed to consider those impairments in his RFC assessment. (*Id.* at 26.) The Commissioner responds that the only relevant inquiry here is whether Plaintiff's impairments affected his ability to function in the workplace—and Plaintiff failed to prove that his impairments had this effect. (ECF No. 8 at 12.)

Here, contrary to Plaintiff's assertions, the ALJ neutrally considered the evidence about Plaintiff's gastrointestinal conditions and Hepatitis C, including evidence about complications, when making his severity determination. When discussing the severity of these conditions, although the ALJ did not use the word "chronic," he noted that when Plaintiff was examined by a doctor in June of 2020, he was "very sick and very underweight." (AR 1856.) The ALJ decided nonetheless that other facts suggested that those impairments were not severe. (*Id.*) Specifically, the ALJ highlighted Plaintiff's failure to be treated for Hepatitis C; evidence that Plaintiff had stable hepatomegaly or no hepatomegaly; and Plaintiff's lack of recurrent emergency room visits, inpatient hospital admissions, and surgical treatment for his gastrointestinal conditions. (*Id.*) As such, the ALJ's severity determination as to Plaintiff's gastrointestinal conditions and Hepatitis C was based on "substantial evidence."

Turning to Plaintiff's objections to the ALJ's treatment of these impairments in its RFC determination, the Third Circuit has held that "[i]n making a residual functional capacity determination, [an] ALJ must consider all evidence before him." *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 121 (3d. Cir. 2000). "The RFC assessment considers only functional limitations and restrictions that result from an individual's medically determinable impairment or combination of impairments, including the impact of any related symptoms." Social Security Ruling 96-8p (Policy Interpretation Ruling Titles II and XVI: Assessing Residual Functional Capacity in Initial Claims), 1996 WL 374184, at *1 (July 2, 1996).

Here, the ALJ submitted that, in making his RFC determination, he "considered *all* of claimant's medically determinable impairments, including those that are not severe." (AR 1856 (emphasis added).) In the ALJ's RFC analysis, he noted that Plaintiff had been diagnosed with Hepatitis C but denied treatment for it and that Plaintiff had been diagnosed with irritable bowel syndrome. (*Id.* at 1861.) Additionally, the ALJ noted that Plaintiff took medication for his appetite. (*Id.* at 1860.) When the ALJ issued his conclusion about the RFC, he noted that he reached that result based on Plaintiff's "combination of physical and mental MDIs." (*Id.*) Although the ALJ did not elaborate on how Plaintiff's gastrointestinal conditions and Hepatitis C influenced his RFC decision, the ALJ "consider[ed] all the evidence" as required. *See Burnett*, 220 F.3d at 121; *Joseph P.*, 2023 WL 1929945, at *5. Additionally, although the ALJ did not mention ulcerative colitis by name in his RFC determination, "an ALJ is not required to specifically name every alleged impairment in their analysis." *Antonio R. v. Comm'r of Soc. Sec.*, Civ. No. 25-01980, 2026 WL 810050, at *8 n.4 (D.N.J. Mar. 24, 2026). Ultimately, the ALJ's RFC determination is supported by "substantial evidence."

### C. Plaintiff's Use of a Cane

Plaintiff argues that the ALJ's RFC finding is deficient because there is evidence that Plaintiff needed a cane for balance from January 3, 2017 onward, and the ALJ failed to adequately explain how, prior to August 2022, Plaintiff "needed [a] cane to walk and stand but not to balance." (ECF No. 6 at 37.) Plaintiff highlights notes from a MRI he had in 2011 and argues that these notes suggest Plaintiff's right knee was "permanently unstable." (*Id.* at 35-36 (citing AR 1348).) In contrast, the Commissioner contends that the ALJ thoroughly explained his reasoning for the limitations he assessed with respect to Plaintiff's cane usage before and after August 15, 2022. (ECF No. 8 at 15.) The Court agrees.

The ALJ explained how the first evidence that Plaintiff required a cane to balance appeared in the record on August 15, 2022. (AR 1867.) The ALJ noted that "[w]hen seen by Dr. Lupicki on August 15, 2022, right knee instability was noted." (*Id.*) He also explained that on "April 8, 2025, [Plaintiff] presented with complaints of . . . poor balance." (*Id.*) He noted that Plaintiff entered the April 8, 2025 examination "leaning on a straight leg cane with an antalgic gait." (*Id.*) The ALJ concluded that these "clinical findings" showed "use of a handheld assistive device for ambulation, balance, and support." (*Id.*) Finally, the ALJ cited Dr. Potashnik's April 8, 2025 opinion that Plaintiff could "never balance." (*Id.*)

In contrast, the ALJ noted that prior to August 15, 2022, Plaintiff reported using his cane "when going up stairs or hills" and that Dr. Arora, who examined Plaintiff, noted that Plaintiff was able to walk without his cane and with a limp. (*Id.* at 1862.) Thus, the ALJ concluded that before August 15, 2022, Plaintiff only needed to use "a cane to ambulate to and from the workstation." (*Id.*) The ALJ "reasonabl[y] articulat[ed]" the rationale for distinguishing between before and after August 15, 2022 in his RFC determination. The ALJ further allowed this Court to "trace the path" of that reasoning. See *Joseph P.*, 2023 WL 1929945, at *5. Although the ALJ did not specifically

reference Plaintiff's 2011 MRI results, an ALJ "need not mention every piece of evidence in the record." *Beety-Monticelli v. Comm'r of Soc. Sec.*, 343 F. App'x 743, 747 (3d Cir. 2009). The ALJ's RFC finding, insofar as it pertains to Plaintiff's need for a cane, was thus sufficiently articulated and is supported by substantial evidence.

**D. Plaintiff's Sitting Capacity**

Finally, Plaintiff argues that the ALJ failed to recognize that, since January 3, 2017, Plaintiff has been unable to sit for six hours a day, which he would need to do to perform sedentary work. (ECF No. 6 at 37, 39-40.) Plaintiff cites MRI results from 2011 demonstrating lower back pain. (*Id.* at 38-39.) Plaintiff suggests that the ALJ's findings related to Plaintiff's sitting capacity create the "impression" that the Court's remand orders, like the 2022 remand order, "carry little weight" with ALJs. (*Id.* at 40.) The Court disagrees.

"An ALJ may . . . afford a treating physician's opinion more or less weight depending upon the extent to which supporting explanations are provided." *Plummer*, 186 F.3d at 429. In the ALJ's RFC determination addressing the period before August 15, 2022, the ALJ acknowledged Dr. Lupicki's 2017 opinion that Plaintiff could "sit less than 6 hours" per workday and thus the ALJ complied with the Court's 2022 Order pertaining to Dr. Lupicki's opinion. (AR 1865.) The ALJ, however, afforded little weight to Dr. Lupicki's opinion because it was "not supported by substantial evidence or consistent with the medical evidence of record," an appropriate determination under *Plummer*, 186 F.3d at 429. (*Id.*) Although the ALJ did not specifically mention the 2011 MRI results, the ALJ cited Dr. Lupicki's report, which includes the MRI results, and noted Dr. Lupicki's opinion in the report that Plaintiff has limitations due to back pain. (*Id.* (citing AR 1330-1334).) The ALJ also considered in detail other evidence from before 2022 that suggested that Plaintiff did not have difficulty with sitting, including physical exams from 2017 and 2020 and the Third-Party Function Report submitted by Plaintiff's aunt. (*Id.*)

The ALJ thus considered Plaintiff's pre-2022 sitting capacity in a manner consistent with the Court's 2022 remand Order, and the ALJ reasonably articulated the reasoning behind his RFC determination. The RFC determination, insofar as it pertains to Plaintiff's sitting capacity, is supported by substantial evidence.

## IV. CONCLUSION

For the foregoing reasons, and other good cause shown, the Commissioner's final decision is **AFFIRMED**. An appropriate Order follows.

Dated: September 24, 2026

GEORGETTE CASTNER
UNITED STATES DISTRICT JUDGE